## A98A1059. MOODY v. THE STATE.
(502 SE2d 323)

ELDRIDGE, Judge.

Following a July 1996 jury trial, the defendant, Sylvester Moody, was convicted of possession of cocaine under OCGA § 16-13-30 (a) and sentenced to fifteen years imprisonment, with eight to serve. He appeals his conviction and we affirm.

The facts are as follows: at approximately 3:00 p.m. on February 2, 1996, the Savannah-Chatham Counter Narcotics Team (CNT) executed a search warrant, predicated on three previous controlled drug buys, at 116-a Garden Homes, Savannah. The CNT agents were dressed in vests bearing the word "Police" in large letters and each had a police badge on a chain around his neck in plain view. As the CNT agents approached the front door of the apartment, they yelled "police with a search warrant." Moody, who was standing inside a

screen door, slammed the inner metal door in the agents' faces. The front door was then locked, and Moody attempted to flee out the back door, which was blocked by CNT agents. The agents repeatedly yelled out "police, police, stop." Moody turned, threw a gun and some drugs on the floor, and ran upstairs, where he eventually was found hiding in a bedroom closet.

In the apartment, the CNT seized almost 100 grams of crack cocaine. Some of the cocaine was found on the kitchen counter and in a bottomless Ajax cleanser can. However, cocaine also was scattered on the kitchen floor near the back door where Moody had attempted to escape. In addition, the CNT seized a "very large" Glock .40 caliber pistol, "thousands" of empty small plastic baggies of the type used to package cocaine, as well as a bottle of inositol (or isotol), a cocaine cutting agent. Moody was searched and was found to be carrying $1,090 in cash and a pager.

The CNT arrested Moody and Michelle Massey, the apartment's lessee. Massey claimed that she had left work and arrived at the apartment just before the arrest. This claim was corroborated by employment pay records and by the woman who gave her a ride home from work. Massey also disavowed any knowledge that drugs or firearms were in the apartment.

Moody claimed that he had arrived at the apartment shortly before the arrest, and was only there to use the phone. It is undisputed that Moody was a visitor to the apartment.

Moody was indicted on two counts of trafficking in cocaine, OCGA § 16-13-31 (a), and one count of possession with intent to distribute, OCGA § 16-13-30 (b).[1] Following a jury trial, Moody was acquitted of these charges, but convicted of the lesser included offense of possession of cocaine. It is from this conviction that Moody appeals.

1. In his first enumeration of error, Moody contends that the trial court erred in sustaining the State's motion in limine to exclude evidence regarding controlled drug buys at the apartment prior to his arrest. These drug buys were used as the basis upon which to secure the search warrant executed in this case. Moody argues that testimony regarding the previous drug buy would prove that drugs were present in the apartment before he arrived on February 2, 1996. Although it is not clear from his brief, Moody apparently contends that others brought the cocaine to the apartment and that his mere proximity to the cocaine is insufficient to prove his guilt of possession beyond a reasonable doubt.

---

[1] Moody also was charged with one count of possession of a firearm by a convicted felon, OCGA § 16-11-131. However, this charge was severed from the trial on the cocaine charges.

At the outset, it is unnecessary to decide whether such evidence was relevant to the charges upon which Moody was indicted, since Moody was acquitted of the trafficking and possession with intent charges. He was convicted, instead, of simple possession. Accordingly, we must decide only whether such evidence was relevant and admissible regarding the issue of whether Moody "purchase[d], possess[ed], or [had] under his control any controlled substance" while in the apartment at the time of his arrest. OCGA § 16-13-30 (a). If so, we must determine whether such evidence was wrongly excluded by the trial court.

"Possession of contraband may be actual or constructive. Moreover, joint constructive possession with another will sustain a conviction for possession of contraband. A person who knowingly has direct physical control over a thing at a given time is in actual possession of it. A person who, though not in actual possession, knowingly has both the power and intention at a given time to exercise dominion or control over a thing is then in constructive possession of it." (Citations and punctuation omitted.) *Allen v. State*, 191 Ga. App. 623, 624 (2) (382 SE2d 690) (1989). Such intent to exercise control can be inferred by the totality of the circumstances, including the presence of large amounts of contraband and drug paraphernalia in plain view, inconsistent explanations by the defendant for his behavior, and the defendant's attempt to flee or hide from police. See *Allen v. State*, supra at 625; see also *Petty v. State*, 221 Ga. App. 125 (470 SE2d 517) (1996); *Hicks v. State*, 195 Ga. App. 887 (395 SE2d 341) (1990).

However, this Court recognizes the long-standing rule that "[a] finding of constructive possession must be based upon some connection between the defendant and the contraband other than spatial proximity. Evidence of mere presence at the scene of the crime, and nothing more to show participation of a defendant in the illegal act, is insufficient to support a conviction." (Citations and punctuation omitted.) *Paden v. State*, 216 Ga. App. 188, 189 (453 SE2d 788) (1995).

Further, "where a conviction for possession of contraband depends entirely on circumstantial evidence, it must both be consistent with the hypothesis of guilt and must exclude every other *reasonable* hypothesis. *Ennis v. State*, 130 Ga. App. 716, 717 (2) (204 SE2d 519) (1974)." (Punctuation omitted; emphasis supplied.) *Paden v. State*, supra at 189; see also *Hicks v. State*, supra. "Whether or not in a given case circumstances are sufficient to exclude every reasonable hypothesis save the guilt of the accused, is primarily *a question for determination by the jury. . . .* After having heard the witnesses and having observed them testify, they are more capable of judging of the *reasonableness* of a hypothesis produced by the evidence, or the

lack of evidence, and the defendant's statement, than is a court of law." (Citations and punctuation omitted; emphasis supplied.) *Harris v. State*, 236 Ga. 242, 244-245 (1) (223 SE2d 643) (1976).

In this case, Massey, the co-defendant, pled guilty and testified that she saw Moody throw the pistol near the pantry and cocaine on the floor before he ran upstairs to hide. However, in addition to this direct evidence of actual possession, the State also presented circumstantial evidence to show his constructive possession of the cocaine. Specifically, this circumstantial evidence included the presence of large amounts of cocaine and drug paraphernalia, as well as a Glock .40 caliber pistol, in plain view. Several witnesses also testified regarding Moody's extensive attempts to interfere with the execution of the search warrant, to flee the apartment, and to elude police by hiding in an upstairs bedroom. As previously noted, such actions constitute evidence of Moody's consciousness of guilt and of his intention to exercise control over the contraband. See OCGA § 16-2-6; *Hurston v. State*, 202 Ga. App. 311 (414 SE2d 303) (1991); *Scott v. State*, 193 Ga. App. 74 (387 SE2d 31) (1989); *Travis v. State*, 192 Ga. App. 695, 696 (385 SE2d 779) (1989); *Stafford v. State*, 187 Ga. App. 401 (370 SE2d 646) (1988); *Prather v. State*, 116 Ga. App. 696 (158 SE2d 291) (1967).

This evidence also directly conflicts with Moody's assertion that he was at the apartment simply to use the telephone, an explanation that obviously was rejected by the jury. Although Moody claims to have been at the apartment only two minutes prior to the execution of the warrant, Massey testified that he was there when she got home from work several minutes before the agents arrived. Even though approximately ten CNT agents surrounded the apartment, not one saw Moody enter the apartment immediately prior to the raid.

Such evidence distinguishes this case from the cases cited by Moody in which the defendants presented reasonable explanations for their behavior that were not excluded by the circumstantial evidence. See *Paden v. State*, supra at 190; *Farmer v. State*, 152 Ga. App. 792, 793 (264 SE2d 235) (1979) (holding that evidence was insufficient to prove possession when there was no paraphernalia or attempt to flee and when the defendants were "polite and cooperative, even helpful").

Moody's attempts to avoid arrest and the presence of contraband in plain view also distinguish this case from those in which the circumstantial evidence did not exclude the possibility that someone else had equal access to the premises and had brought the contraband to the premises *without the defendant's knowledge.* See *Ivey v. State*, 226 Ga. 821, 824 (4) (177 SE2d 702) (1970); *Reid v. State*, 212 Ga. App. 787 (442 SE2d 852) (1994); *Ennis v. State*, supra at 717.

Massey's testimony supports a finding that Moody knew about the drugs and, at a minimum, jointly possessed the drugs.

Finally, even if evidence had been presented that others had access to the apartment and had previously brought drugs to the apartment, such evidence does not preclude a finding that Moody was in joint constructive possession of the cocaine on the day of his arrest. "The evidence [that previous controlled drug buys had taken place at the apartment] did not logically tend to prove or disprove either that [a] third party committed [this] crime or that [Moody] did not commit [this] crime. The evidence offered would have served merely to divert the jury's attention from the pertinent facts of the case." (Citations and punctuation omitted.) *Pitts v. State*, 206 Ga. App. 635, 636 (426 SE2d 257) (1992); see also *Higginbotham v. State*, 207 Ga. App. 424, 427-428 (5) (428 SE2d 592) (1993); *McNeil v. State*, 202 Ga. App. 900, 901-902 (415 SE2d 922) (1992). There was no error in the trial court's decision to exclude evidence of prior drug buys at the apartment.[2]

2. Moody asserts that the trial court erred in denying his motion for a directed verdict of acquittal at the conclusion of the State's case. He argues that Massey was an accomplice whose testimony was not corroborated, so that such evidence was insufficient to prove that he was in possession of the cocaine. See OCGA § 24-4-8. However, Massey's testimony was, in fact, corroborated by testimony of the CNT agents regarding Moody's attempts to flee the apartment and the presence of cocaine and drug paraphernalia in plain view. Further, Massey's co-worker corroborated her claim that Massey arrived home from work a few minutes before the execution of the search warrant. Such circumstantial evidence is sufficient corroboration of Massey's testimony. "The necessary corroboration may consist entirely of circumstantial evidence, and evidence of the defendant's conduct before and after the crime was committed may give rise to an inference that he participated in the crime." (Citations and punctuation omitted.) *Bradford v. State*, 262 Ga. 512, 513 (421 SE2d 523) (1992); *Daniel v. State*, 207 Ga. App. 720, 721 (429 SE2d 130) (1993); *Allen v. State*, 175 Ga. App. 128, 129 (2) (333 SE2d 11) (1985). "Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict." (Citations and punctuation omitted.) *Daniel v. State*, supra

---

[2] In this enumeration, Moody also argued that he was denied the right to cross-examine Massey regarding her motivations for testifying. However, the transcript shows that the trial court did, in fact, allow such cross-examination. Even so, such assertion is outside the enumeration of error. "[E]rror argued but not enumerated will not be considered [on appeal]. . . . Enumerations of error cannot be enlarged by means of statements in the brief of counsel to include issues not made in the enumeration." (Citation and punctuation omitted.) *Donelson v. State*, 220 Ga. App. 688, 689 (469 SE2d 861) (1996).

at 721.

Further, as noted in Division 1, supra, there was substantial evidence of Moody's guilt beyond Massey's testimony. In addition to evidence that Moody attempted to flee the apartment and elude arrest, the record shows that substantial amounts of cocaine and drug trafficking paraphernalia, including "thousands" of small plastic baggies, a bottle of isotol, and a weapon, were found in the apartment in plain view.

Such evidence created a jury issue as to Moody's possession of cocaine, so that he was not entitled to a directed verdict of acquittal. OCGA § 17-9-1 (a).

3. Further, "[o]n appeal the evidence must be viewed in a light most favorable to the verdict, and appellant no longer enjoys a presumption of innocence; moreover, on appeal this [C]ourt determines evidence sufficiency, and does not weigh the evidence or determine witness credibility. [Cits.]" *Grant v. State*, 195 Ga. App. 463, 464 (393 SE2d 737) (1990); see also *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). This evidence was sufficient for a rational trier of fact to find Moody guilty beyond a reasonable doubt of possession of cocaine. *Jackson v. Virginia*, supra.

4. Moody also challenges the validity of the search warrant and asserts that the trial court erred in denying his motion to suppress evidence. "On appeal of the denial of a motion to suppress, the evidence is to be construed most favorably to the upholding of the findings and judgment made[,] . . . [and the] trial court's findings must be adopted unless determined to be clearly erroneous." (Citations and punctuation omitted.) *Dennis v. State*, 166 Ga. App. 715, 716 (305 SE2d 443) (1983).

(a) It is undisputed that Moody has no ownership or possessory interest in Massey's apartment. As such, he had no expectation of privacy in the premises and lacks standing to challenge the validity of the search warrant. *Rakas v. Illinois*, 439 U. S. 128 (1) (99 SC 421, 58 LE2d 387) (1978); *Delgado v. State*, 192 Ga. App. 356, 357 (384 SE2d 680) (1989); *Sanders v. State*, 181 Ga. App. 117, 119 (351 SE2d 666) (1986); *Dennis v. State*, supra at 717; *Staton v. State*, 164 Ga. App. 464, 465 (1) (297 SE2d 375) (1982); *Lester v. State*, 163 Ga. App. 604 (295 SE2d 566) (1982).

(b) Further, although Moody was not specifically named in the warrant, the warrant authorized the search of "all persons present at time of warrant execution who may reasonably be involved in the crime of possession of illegal drugs or narcotics." Since the evidence supports a finding that Moody constructively possessed the contraband at issue, he was subject to detention and search under the terms of the warrant. *Travis v. State*, supra at 695-696; *Willis v. State*, 122 Ga. App. 455, 456-458 (177 SE2d 487) (1970).

Finally, under OCGA § 17-5-28, during the execution of a search warrant, "the officer executing the same may reasonably detain or search any person in the place at the time: (1) To protect himself from attack; or (2) To prevent the disposal or concealment of any instruments, articles, or things particularly described in the search warrant." "It has been held that this statute does not limit the officer's right to search persons as to whom probable cause for a warrantless search exists. Probable cause need not be defined in relation to any one particular element, but may exist because of the totality of the circumstances surrounding a transaction. . . . In the present case, [Moody's] presence on the premises at the time the warrant was executed, coupled with his flight, provided probable cause for a belief that he was in possession of, or was at least a party to the possession of, unlawful contraband." (Citations and punctuation omitted.) *Travis v. State*, supra at 696; see also *Delgado v. State*, supra at 357 (holding that a pat-down was authorized during the execution of a search warrant because contraband was discovered in plain view).

The trial court properly denied Moody's motion to suppress.

5. Moody's remaining enumerations are deemed abandoned pursuant to Court of Appeals Rule 27 (c) (2), which requires enumerations of error to be supported by citation to authority or argument.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED MAY 7, 1998.

*William O. Cox*, for appellant.

*Spencer Lawton, Jr., District Attorney, George R. Asinc, Assistant District Attorney*, for appellee.